**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DOLPHIN COVE INN, INC.,

                Plaintiff,

v.                                         Case No. 3:19-cv-1018-J-34JRK

THE VESSEL OLYMPIC JAVELIN, her
engines, tackle, apparel, furniture and
furnishings, equipment, and appurtenances,
in rem; and SOUTHERN MARINE
SERVICES, INC., FREDERICK GATCHELL,
and MARK TARLOWSKI in personam,

                Defendants.

_____

## REPORT AND RECOMMENDATION[1]

### I.   Status / Background

      This cause is before the Court on Plaintiff Dolphin Cove Inn, Inc.'s Motion for Default

Judgment Against Defendants the Vessel Olympic Javelin, Southern Marine Services, Inc.

and Frederick Gatchell (Doc. No. 28; "First Motion"), filed January 7, 2020, and Plaintiff

Dolphin Cove Inn, Inc.'s Motion for Default Judgment Against Defendant Mark Tarlowski

(Doc. No. 58; "Second Motion"), filed October 19, 2020.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Plaintiff initiated this action by filing a Verified Complaint (Doc. No. 1; "Complaint") on August 29, 2019. Defendants the Vessel Olympic Javelin ("the Vessel"), Southern Marine Services, Inc. ("Southern Marine"), and Frederick Gatchell were served with copies of the Complaint, the respective summonses (Doc. Nos. 14, 16, 17), and the Notice of Claim of Lien (Doc. No. 2) on September 12, 2019. See Affidavits of Process Server (Doc. No. 19-2). (As explained below, infra p. 4, Defendant Mark Tarlowski was not served until August 24, 2020.)

On October 8, 2019, Plaintiff filed a Request for Clerk's Entry of Default Against Defendants the Vessel, Southern Marine, and Mr. Gatchell (Doc. No. 19; "Motion for Default"). On October 16, 2019, the Court entered an Order (Doc. No. 22) taking the Motion for Default under advisement and directing Plaintiff to file a supplement advising the Court whether "the master or other person having custody" of the Vessel had been properly served. Oct. 16, 2019 Order at 2 (quoting Local Rule 7.03(h), United States District Court, Middle District of Florida ("Local Rule(s)")). Accordingly, on October 25, 2019, Plaintiff filed a Supplemental Request for Clerk's Entry of Default Against Defendants the Vessel, Southern Marine, and Mr. Gatchell (Doc. No. 23; "Supp. Motion for Default" or "Supplemental Motion for Default").

On November 5, 2019, the Court entered an Order (Doc. No. 24) granting the Motion for Default. The Clerk of the Court entered default against the Vessel, Southern Marine, and Mr. Gatchell on November 6, 2019. See Entries of Default (Doc. Nos. 25, 26, 27). Thereafter, the First Motion was filed. Plaintiff certified that a copy of the First Motion

was mailed to the Vessel, Southern Marine, and Mr. Gatchell at their last known addresses. See First Motion at 6.[2]

On May 4, 2020, the Court entered an Order (Doc. No. 36) directing Plaintiff to file a supplemental memorandum indicating the amount of attorney's fees and costs it seeks in the First Motion and providing supporting information and/or documentation. See May 4, 2020 Order at 4. On May 26, 2020, Plaintiff filed the Supplemental Memorandum Regarding Fees and Costs Against Defendants the Vessel, Southern Marine, and Mr. Gatchell (Doc. No. 37; "Supplemental Memorandum").

Observing that Plaintiff had not effected service of process on Mr. Tarlowski or dismissed its claims against him, the Court entered an Order to Show Cause (Doc. No. 44) on July 6, 2020 directing Plaintiff to show cause why the claims against Mr. Tarlowski should not be dismissed without prejudice for failure to prosecute pursuant to Local Rule 3.10. On July 13, 2020, Plaintiff filed a Response to Order to Show Cause and Ex Parte Application for Order Authorizing Alternate Service of Process on Defendant Tarlowski Pursuant to Federal Rule of Civil Procedure 4(f)(3) and Memorandum of Law (Doc. No. 45; "Motion for Alternate Service"). In the Motion for Alternate Service, Plaintiff requested that the Court allow service of process on Mr. Tarlowski via email because he could not "with reasonable diligence be found and served in any other manner specified in the Federal Rules of Civil Procedure [('Rule(s)')], and [he] is knowingly avoiding service of process." Motion for Alternate Service at 1.

---

[2]     The First Motion contains unnumbered pages. Citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

On July 16, 2020, the Court entered an Order (Doc. No. 46) deferring ruling on the First Motion pending resolution of the issue regarding service of process on Mr. Tarlowski because entering default judgment against Southern Marine and Mr. Gatchell (with claims pending against Mr. Tarlowski) might result in inconsistent judgments. See July 16, 2020 Order at 2-3. The undersigned set a videoconference hearing on the Motion for Alternate Service for August 17, 2020. See id. at 3-4. The hearing was held accordingly, see Clerk's Minutes (Doc. No. 47), and on August 21, 2020, the Court entered an Order (Doc. No. 48) granting the Motion for Alternate Service and directing Plaintiff to effect service of process on Mr. Tarlowski via email at ccaptainmark@gmail.com and file proof of service.

On August 25, 2020, Plaintiff filed three proofs of service: 1) an August 24, 2020 email sent to ccaptainmark@gmail.com—attaching the Complaint (Doc. No. 1), the summons (Doc. No. 15), and the August 21, 2020 Order—and two follow-up emails dated September 1, 2020 and September 8, 2020, see Proof of Service (Doc. No. 52); 2) a Verified Return of Service confirming that copies of the Complaint, its exhibits, the summons, and the August 21, 2020 Order were sent via email to ccaptainmark@gmail.com on August 24, 2020, see Proof of Service (Doc. No. 53); and 3) a Verified Return of Service explaining that on July 10, 2020, the process server attempted once again to personally serve Mr. Tarlowski but was unsuccessful, see Proof of Service (Doc. No. 54).

Mr. Tarlowski did not file a response to the Complaint or otherwise appear. Consequently, on October 6, 2020, Plaintiff filed a Request for Clerk's Entry of Default Against Defendant, Mark Tarlowski (Doc. No. 55), which the Court granted, see Order

(Doc. No. 56), entered October 8, 2020.[3] The Clerk entered default against Mr. Tarlowski on October 9, 2020. See Entry of Default (Doc. No. 57).

Thereafter, the Second Motion was filed on October 19, 2020. Plaintiff certifies that a copy of the Second Motion was sent to Mr. Tarlowski via email. See Second Motion at 10. On the same date, Plaintiff filed an Amended Supplemental Memorandum Regarding Attorney's Fees and Costs Against Defendants the Vessel, Southern Marine, Mr. Gatchell, and Mr. Tarlowski (Doc. No. 59; "Amended Suppl. Mem." or "Amended Supplemental Memorandum"), supplementing both Motions. Plaintiff certifies that a copy of the Amended Supplemental Memorandum was mailed to Mr. Gatchell, Southern Marine, and the Vessel and that it was sent to Mr. Tarlowski via email. See Amended Suppl. Mem. at 12-13.

Despite being served with process and being provided adequate time to respond to the Motions, Defendants have failed to respond or otherwise appear. The Motions, now being ripe for consideration, are deemed unopposed.

After due consideration and for the reasons set out herein, the undersigned finds the First Motion is due to be granted to the extent it seeks a default judgment against Mr. Gatchell and Southern Marine, and it is due to be denied to the extent it seeks a default

---

[3]     As noted in the October 8, 2020 Order, the Court is satisfied that the Complaint and summons were delivered to Mr. Tarlowski. See Fed. R. Civ. P. 4(l)(2)(B) (requiring that service made under Rule 4(f)(3) must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee"). The email address (ccaptainmark@gmail.com) is operational because it responded to an email from the process server inquiring about the Vessel, and although there were no responses to the other emails, the emails evidently were not returned as undeliverable. See Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. Apr. 29, 2010) (unpublished) (allowing service of process by email, finding emails that "did not bounce back presumptively reached [the d]efendant"); Gaffigan v. Does 1-10, 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2010) (addressing whether notice of show cause hearing reached the defendants and finding that "the emails that did not bounce back were presumptively sent to valid email addresses that reached [the d]efendants").

judgment against the Vessel and a maritime lien. The Second Motion is due to be granted, as set out below. Both Motions are also due to be granted to the extent they seek attorney's fees and costs, except the fees and costs to be awarded are less than those requested in the Amended Supplemental Memorandum, as explained herein.

## II.   Complaint

Plaintiff brings this action <u>in rem</u> against the Vessel and <u>in personam</u> against Southern Marine, Mr. Gatchell, and Mr. Tarlowski to recover damages incurred as a result of an allision between the Vessel and Plaintiff's floating docks. Factually, the Complaint alleges as follows.

Mr. Gatchell is the president of Southern Marine and a resident of Brevard County, Florida. Complaint at 2 ¶ 5. Mr. Gatchell and Southern Marine own the Vessel. <u>Id.</u> ¶ 6. Mr. Tarlowski was a "pilot hired and supervised by Southern Marine and [Mr.] Gatchell to navigate the Vessel through St. John's County, Florida." <u>Id.</u> ¶ 7. Plaintiff owns "a series of concrete floating docks on the Matanzas River, part of the Intracoastal Waterway, which are navigable waters in St. John's County, Florida." <u>Id.</u> ¶ 8.

On October 6, 2018, the Vessel (piloted by Mr. Tarlowski) departed from Swan Quarter, North Carolina. <u>Id.</u> at 3 ¶ 9. Southern Marine and Mr. Gatchell had "arranged for the delivery" of the Vessel. <u>Id.</u>[4] "On October 9, 2018, the Vessel lost steering control while navigating the Matanzas River in St. John's County, Florida." <u>Id.</u> ¶ 10. The Vessel crashed into Plaintiff's "docks—which are fixed objects—causing damage to a concrete piling and

---

[4]        It is unclear from the Complaint where the Vessel was to be delivered.

some of the floating docks." Id. ¶ 12. There was no anchor on the Vessel, even though "it is customary to have an anchor aboard a ship during navigation . . . ." Id. ¶ 11.

According to the Complaint, it cost $15,951.00 to repair Plaintiff's concrete piling, and it is estimated it will cost $26,875.00 to repair Plaintiff's floating docks. Id. ¶¶ 13-14. Plaintiff made "multiple attempts to contact Southern Marine and [Mr.] Gatchell regarding payment for the damages caused by the Vessel." Id. ¶ 15. Although Plaintiff demanded payment from Southern Marine and Mr. Gatchell for the damages ($42,826.00 plus interest), no payment has been made. Id. ¶¶ 16-17. Plaintiff asserts that the damages incurred entitle it to a maritime lien against the Vessel. Id. at 4 ¶ 18.

Southern Marine representatives have indicated the Vessel is located "in the waters of Haiti." Id. ¶ 20. Plaintiff alleges that "the Vessel is mobile, Southern Marine intends to bring the Vessel back into Florida during the pendency of this action, and Plaintiff wishes to arrest the Vessel when it returns to the United States." Id.

The Complaint asserts six counts: negligence against the Vessel (Count I); negligence against Southern Marine (Count II); negligence against Mr. Gatchell (Count III); negligence against Mr. Tarlowski (Count IV); vicarious liability against Southern Marine (Count V); and vicarious liability against Mr. Gatchell (Count VI).[5] Id. at 5-7.

As relief against the Vessel, Plaintiff requests that the Clerk issue a warrant to be served on the Vessel when it returns to the jurisdiction of the United States and that the Vessel be seized and sold to satisfy Plaintiff's in rem claims against the Vessel ($42,826.00 in damages plus attorney's fees, costs, and interest). Id. at 7. As relief against Southern

---

[5]     The Complaint labels the last count as Count V in error. See Complaint at 7.

Marine, Mr. Gatchell, and Mr. Tarlowski, Plaintiff asks that they be held jointly and severally liable for "any deficiency after the sale of the Vessel or for full damages of $42,826.00 plus attorney's fees, costs, and interest if the Vessel does not come into the jurisdiction." Id. at 8. Plaintiff further requests that if "the circumstances align with the requirements of Supplemental Rule B, that the Court apply Maritime Garnishment and Attachment to Defendants' assets, including but not limited to monetary accounts or sister ships." Id.

### III.  Discussion

In determining whether the Motions should be granted, the undersigned considers whether there is jurisdiction over the claims; whether Plaintiff has stated valid causes of action; and whether Plaintiff has set forth sufficient evidence to establish entitlement to the remedies sought. These issues are addressed in turn below.

**A.  Jurisdiction**

This case is properly within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 because the incident occurred on a navigable waterway in Florida, the incident had "a potentially disruptive impact on maritime commerce," and the activity giving rise to the incident bore a substantial relationship to traditional maritime activity. DeRoy v. Carnival Corp., 963 F.3d 1302, 1311-12 (11th Cir. 2020); see Complaint at 2-3.

The Court has personal jurisdiction over Mr. Gatchell because he is a resident of Florida, see Complaint at 2 ¶ 5, and was properly served, see Affidavits of Process Server (Doc. No. 19-2). See Fed. R. Civ. P. 4(k)(1)(A) (providing that service of summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located); Subic Bay Marine Exploratorium, Inc. v. JV China, Inc., 257 So.3d 1139, 1141 (5th DCA 2018)

(recognizing that "Florida residents are subject to the general jurisdiction of Florida courts"). Mr. Gatchell is neither a minor nor an incompetent person. See Affidavit of Robert C. Culpepper (Doc. No. 19-1; "Culpepper Affidavit"), filed October 8, 2019, at 1 ¶ 2. Additionally, Plaintiff has complied with the Servicemembers Civil Relief Act to the extent required. See Culpepper Affidavit at 1 ¶ 2.

As to Mr. Tarlowski, it is unclear whether he is a resident of Florida. The Complaint alleges he is a Florida resident, but on October 3, 2019, he told the process server that "[h]e was in St. Vincent where he had si[gn]ed a year[-]long contract and would only be returning to the US periodically." Affidavit of Non-Service (Doc. No. 45-2) at 2. The evidence presented does not indicate that Mr. Tarlowski has returned to Florida. In any event, to the extent Mr. Tarlowski is a nonresident, this Court has personal jurisdiction over him under Florida's long-arm statute because the allision at issue occurred within the territorial waters of the state of Florida. See Complaint at 2 ¶ 8, 3 ¶ 12; Fla. Stat. § 48.193(1)(a)(2). Moreover, sufficient minimum contacts exist to justify haling Mr. Tarlowski into a Florida court, and the exercise of personal jurisdiction over Mr. Tarlowski does not offend traditional notions of substantial justice and fair play.[6] Mr. Tarlowski is neither a minor nor an incompetent person. See Culpepper Affidavit at 1 ¶ 2. Additionally,

---

[6]    "[I]n determining whether personal jurisdiction exists in admiralty cases, a federal court must look to the long-arm statute of the state where it sits and the cases that interpret that statute." Johns v. Taramita, 132 F. Supp. 2d 1021, 1027 n.8 (S.D. Fla. 2001) (citing Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A., 197 F.3d 1070, 1072-74 (11th Cir. 1999)). If the requirements of the long-arm statute are met, "then the court must inquire as to, (1) whether [the] defendant has established sufficient 'minimum contacts' with the state of Florida; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 630-31 (11th Cir. 1996)).

- 9 -

Plaintiff has complied with the Servicemembers Civil Relief Act to the extent required. <u>See</u> <u>id.</u>

This Court also has personal jurisdiction over Southern Marine because it was properly served, <u>see</u> Affidavit of Process Server (Doc. No. 19-2), and it appears that it is resident of Florida. The Complaint alleges Southern Marine is located in Florida, <u>see</u> Complaint at 2 ¶ 4, and Florida's 2019 Profit Corporation Annual Report for Southern Marine indicates that Southern Marine has its principal place of business in Florida and has a registered agent in Florida, <u>see</u> Plaintiff's Notice of Filing Verified Return of Service on the Vessel (Doc. No. 30) at Ex. A (2019 Florida Profit Corporation Annual Report). Even if Southern Marine is a nonresident, this Court nonetheless has personal jurisdiction over Southern Marine. First, as noted, the requirements of Florida's long-arm statute are met because the allision at issue occurred within the territorial waters of the state of Florida. <u>See</u> Complaint at 2 ¶ 8, 3 ¶ 12; Fla. Stat. § 48.193(1)(a)(2). Second, sufficient minimum contacts exist to justify haling Southern Marine into a Florida court. Third, the exercise of personal jurisdiction over Southern Marine does not offend traditional notions of substantial justice and fair play.

The undersigned is not convinced, however, that this Court has <u>in rem</u> jurisdiction to enter judgment against the Vessel. As noted above, the Complaint alleges that the Vessel is expected to return to Florida during the pendency of the action and that Plaintiff will arrest the Vessel when it does so. Complaint at 4 ¶ 20. In the Supplemental Motion for Default, Plaintiff explained that according to a representative from Southern Marine, the Vessel was in Haiti, was involved in a mishap involving another boat, and "was 'being held

- 10 -

for ransom from the vessel that pulled it off the rocks.'" Supp. Motion for Default at 2[7]
(quoting email from Southern Marine representative, see Supp. Motion for Default at Ex.
A (Doc. No. 23-1)). It does not appear that the Vessel has returned to this district or that
Plaintiff has arrested the Vessel. As such, the undersigned finds that the Court should not
enter judgment against the Vessel. See L.B. Harvey Marine, Inc. v. M/V River Arc, 712
F.2d 458, 459 (11th Cir. 1983) (recognizing that "[t]he presence of the res within a court's
territorial jurisdiction is necessary before the court can proceed to adjudication" and that
"where the res is no longer before the court, its in rem jurisdiction is destroyed . . . ."
(citations omitted)); Ferrostaal, Inc. v. M/V Yvonne, 10 F. Supp. 2d 610, 614 (E.D. La.
1998) (dismissing action "since the [vessel] ha[d] not been arrested in th[e] district");
Dluhos v. Floating & Abandoned Vessel Known as New York, 979 F. Supp. 138, 140
(N.D.N.Y. 1997) (finding that "[w]ithout the arrest of the vessel, th[e c]ourt lack[ed]
jurisdiction over the claim for title alleged in the second amended complaint"), aff'd, 162
F.3d 63 (2d Cir. 1998).[8]

## B.  Causes of Action

As a preliminary matter, the undersigned finds that federal maritime law governs
the substantive issues in the case because this is an action in admiralty. See Amy v.
Carnival Corp., 961 F.3d 1303, 1308 (11th Cir. 2020). Plaintiff seeks a default judgment
presumably on all counts: general maritime law negligence against all the defendants and

---

[7]     The Supplemental Motion for Default contains unnumbered pages. Citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

[8]     The undersigned notes that the Court did not lack in rem jurisdiction at the time the suit was filed because Plaintiff properly pled that the Vessel would return to Florida during the pendency of the action. Complaint at 4 ¶ 20; see Platoro Ltd., Inc. v. Unidentified Remains of a Vessel, 508 F.2d 1113, 1115 (5th Cir. 1975) (stating that "[t]o establish in rem jurisdiction in admiralty the res must be present in the district when the suit is filed or during the pendency of the action").

vicarious liability against Southern Marine and Mr. Gatchell. See First Motion at 1-5; Second Motion at 7-8;[9] Complaint at 5-7. Having found that the Court lacks jurisdiction to enter default judgment against the Vessel, the undersigned addresses the claims against Southern Marine, Mr. Gatchell, and Mr. Tarlowski (hereinafter "Defendants") only.

## 1.  Applicable Law

### a.  General Maritime Law Negligence

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." Amy, 961 F.3d at 1308 (citation omitted). The elements of negligence are as follows: "(1) [the defendant] had a duty to protect [the plaintiff] from a particular injury; (2) [the defendant] breached that duty; (3) the breach actually and proximately caused [the plaintiff's] injury; and (4) [the plaintiff] suffered actual harm." Carroll v. Carnival Corp., 955 F.3d 1260, 1264 (11th Cir. 2020) (citation omitted). "A boat captain has a duty of reasonable care and breaches that duty by making 'a decision which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances.'" Sea La Vie, LLC v. Fisher, No. 3:18-cv-641-J-32PDB, 2019 WL 3909506, at *5 (M.D. Fla. July 26, 2019) (unpublished) (quoting Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018)), report and recommendation adopted, No. 3:18-cv-641-J-32PDB, 2019 WL 3890286 (M.D. Fla. Aug. 19, 2019) (unpublished).

### b.  Vicarious Liability / Respondeat Superior

"The principle of respondeat superior is a cornerstone of law whereby one (the master) is held liable for the negligence of another (a servant), the responsibility depending

---

[9]      In the Second Motion, Plaintiff argues Mr. Tarlowski is "vicariously liable for damage caused by the negligent allision of [the Vessel]." Second Motion at 8. The Complaint, however, does not assert any counts for vicarious liability against Mr. Tarlowski.

'not upon whose employee he (the servant) was generally, but upon whose servant he was when he was guilty of negligence.'" Amerada Hess Corp. v. Ogden Saguenay Transp., Inc., No. 78-878-Civ-J-B, 1979 WL 6504675, at *1 (M.D. Fla. Nov. 21, 1979) (unpublished) (citation omitted). "[U]nder the general maritime law, where the relation of master and servant exists, an owner of an offending vessel committing a maritime tort is responsible, under the rule of respondeat superior, is elementary." Workman v. City of New York, 179 U.S. 552, 565 (1900) (citation omitted). "[I]n an action at common law the shipowner is not liable for injuries inflicted exclusively by negligence of a pilot accepted by a vessel compulsorily." Mount Wash. Tanker Co. v. Wahyuen Shipping, Inc., 833 F.2d 1541, 1542 n.3 (11th Cir. 1987) (quoting Homer Ramsdell Transp. Co. v. La Compagnie Generale Transatlantique, 182 U.S. 406, 416-17 (1901)).

    **2. Analysis**

        ***a. General Maritime Law Negligence Claims***

Plaintiff has alleged sufficient facts, taken as true, to establish the elements of general maritime law negligence with respect to Defendants.

As to Mr. Gatchell and Southern Marine, the Complaint establishes the following. "[T]he owners of the Vessel . . . had a duty to maintain the Vessel in a safe and seaworthy condition, and to take precautions to help prevent or mitigate collisions and allisions with other vessels or property." Complaint at 4 ¶ 21. "As co-owner[s] of the Vessel," Mr. Gatchell and Southern Marine breached their duty "by not ensuring the Vessel was seaworthy prior to or during its navigation to and through St. John's County, Florida," id. at 5 ¶ 31, 6 ¶ 35, "as evinced by the loss of steering control and lack of an anchor," id. at 4 ¶ 22. See also id. at 5 ¶ 32, 6 ¶ 36 (Mr. Gatchell and Southern Marine were "negligent by not ensuring

the Vessel had an anchor onboard, as is customary, prior to or during its navigation to and through St. John's County, Florida"). "As a proximate cause of the negligence of Southern Marine[ and Mr.] Gatchell, . . . [Plaintiff] suffered damages because of the Vessel's allision with [Plaintiff's] property while the Vessel was being piloted on navigable waters." Id. ¶ 24. Specifically, Plaintiff has "incurred damages to its piling and docks totaling $42,826.00 as well as attorney's fees and costs." Id. at 5 ¶ 33, 6 ¶ 37.

With respect to Mr. Tarlowski, the Complaint alleges as follows. "As the pilot of the Vessel, [Mr.] Tarlowski was negligent by [(1)] not ensuring the Vessel was seaworthy prior to or during its navigation to and through St. John's County, Florida" and (2) "not ensuring the Vessel had an anchor onboard, as is customary, prior to or during its navigation to and through St. John's County, Florida." Id. at 6 ¶¶ 39-40. "As a proximate cause of the negligence of [Mr.] Tarlowski, Plaintiff has incurred damages totaling $42,826.00 as well as attorney's fees and costs." Id. ¶ 41.

### b. Vicarious Liability Claims

In the Complaint, Plaintiff alleges that "[a]s the co-owners of the Vessel," Mr. Gatchell and Southern Marine are "vicariously liable for the damages caused by the voluntary pilot under principles of respondeat superior." Id. at 7 ¶¶ 43, 45 (emphasis omitted).

The undersigned finds that Mr. Gatchell and Southern Marine are subject to vicarious liability under the doctrine of respondeat superior. Taking the allegations of the Complaint as true, at the time of the allision, there was a "relation of master and servant" between Mr. Tarlowski and Mr. Gatchell/Southern Marine. Workman, 179 U.S. at 565; see Complaint at 2 ¶ 7. Because, based on the Complaint's allegations, Mr. Tarlowski was not

a compulsory pilot, the undersigned need not determine whether the damages were "inflicted exclusively" by Mr. Tarlowski's negligence. Mount Wash. Tanker Co., 833 F.2d at 1542 n.3; Homer, 182 U.S. at 417.

## C. Remedies

In the Motions, Plaintiff seeks the entry of a joint and several judgment against Defendants in the amount of $42,826.00, plus interest; attorney's fees and costs; and a maritime lien against the Vessel. First Motion at 5; Second Motion at 9. The undersigned addresses each remedy sought in turn below.

### 1. Damages

As Plaintiff states valid causes of action for general maritime law negligence and vicarious liability and, therefore, is entitled to entry of a default judgment, the undersigned must now determine whether a hearing is necessary to decide the amount of damages. "[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) (citation omitted);[10] see also SEC v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). When the essential evidence regarding damages is before a court, a hearing on damages may be unnecessary. See Smyth, 420 F.3d at 1232 n.13.

"As a general rule, prejudgment interest should be awarded in admiralty cases— not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled." Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724, 728 (5th Cir.

---

[10]    In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

1980); see also Sunderland Marine Mut. Ins. Co. v. Weeks Marine Const. Co., 338 F.3d 1276, 1280 (11th Cir. 2003) (recognizing that "[i]t is the general rule of [the Eleventh Circuit] to award pre-judgment interest in admiralty cases" (citation omitted)). A court may decline to award prejudgment interest only if "there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest." Noritake Co., 627 F.2d at 728 (citation omitted). Such circumstances include, for example, the plaintiff's delay in prosecuting the case. City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196 (1995). "Other circumstances may appropriately be invoked as warranted by the facts of particular cases." Id.

Courts need not make specific findings when awarding prejudgment interest. Sunderland Marine Mut. Ins. Co., 338 F.3d at 1280. "In the absence of a controlling statute, the choice of a rate at which to set the amount of prejudgment interest is . . . within the discretion of a federal court." Werner Enterprises, Inc. v. Westwind Mar. Int'l, Inc., 554 F.3d 1319, 1328 (11th Cir. 2009) (citation omitted). The Eleventh Circuit has endorsed the use of the average prevailing prime rate from the date of the collision or the allision in awarding prejudgment interest. See Sunderland Marine Mut. Ins. Co., 338 F.3d at 1280.

Here, the essential evidence regarding damages is before the Court, and there is no need for a hearing. See Smyth, 420 F.3d at 1232 n.13. As noted, Plaintiff asserts its damages total $42,826.00, plus interest. First Motion at 5; Second Motion at 9. Specifically, Plaintiff alleges that the concrete piling was repaired for $15,951.00 and that it is estimated it will cost $26,875.00 to repair the floating docks. Id. at 4. Attached to the Complaint is an

invoice of the costs related to the concrete piling repairs. Id.; see Complaint at Ex. B[11] (Doc. No. 1-2). As to the $26,875.00 needed to repair the floating docks, Plaintiff states the figure was "estimated by representatives from Bellingham Marine, a well-respected international maritime company with over 60 years of history of building and repairing similar docks." First Motion at 4 (citation omitted); Second Motion at 8 (citation omitted); see Complaint at Ex. C (Doc. No. 1-3) (letter from Bellingham Marine providing estimate).

Upon review, the undersigned finds that the damages are warranted and reasonable. No evidence was presented to indicate Plaintiff's request for damages is unreasonable or without basis. Having been served with the Complaint and the Motions, Defendants have received adequate notice of the claims against them and the damages sought. Despite having ample opportunity to respond and address these matters, they have filed nothing in the case. They have made no claim or request for an offset or reduced damages of any kind. Accordingly, Defendants are jointly and severally liable for $42,826.00 in damages. See Groff v. Chandris, Inc., 835 F. Supp. 1408, 1409 (S.D. Fla. 1993) (recognizing that "[u]nder federal maritime law, plaintiffs may obtain judgment for the full amount from any and all joint tortfeasors under the doctrine of joint and several liability" (citation omitted)).

In addition, Plaintiff is entitled to prejudgment interest as there are no peculiar circumstances that would merit departure from the general rule of awarding prejudgment interest. Noritake Co., 627 F.2d at 728. Plaintiff did not propose an interest rate, but the undersigned, in keeping with Eleventh Circuit precedent approving the use of the average

---

[11]   Exhibit A to the Complaint was redacted and re-filed later. See Exhibit A (Doc. No. 8).

prime rate, finds that the applicable interest rate in this case is the average prime rate from October 9, 2018 (the date of the allision) to the date of the entry of judgment. See Sunderland Marine Mut. Ins. Co., 338 F.3d at 1280. The average prime rate from the date of the allision to today is approximately 4.56%. This rate is the average of the following monthly prime interest rates: 5.25% (October 2018 through November 2018); 5.35% (December 2018); 5.5% (January 2019 through July 2019); 5.25% (August 2019); 5.15% (September 2019); 4.99% (October 2019); 4.75% (November 2019 through February 2020); 3.78% (March 2020); and 3.25% (April 2020 through November 2020).[12] See, e.g., Kaba v. Carnival Corp., No. 10-21627-CIV, 2011 WL 5402674, at *2 (S.D. Fla. June 20, 2011) (unpublished).[13]

Based on the foregoing, Plaintiff is entitled to $42,826.00 in damages, plus 4.56% interest on that amount (unless the date of the default judgment requires a different interest rate).

### 2. Attorney's Fees

The general rule is that "[t]he prevailing party in an admiralty case is not entitled to recover its attorney['s] fees as a matter of course." Misener Marine Const., Inc. v. Norfolk

---

[12] The undersigned obtained these figures by using the "Data Download Program" on the Federal Reserve System's website. Data Download Program, Federal Reserve System, https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15 (last visited December 22, 2020); see CMA CGM (Am.) LLC v. Gama Cargo, LLC, No. 11-23117-CIV, 2011 WL 13319378, at *4 (S.D. Fla. Dec. 2, 2011) (unpublished), report and recommendation adopted, No. 10-23117-CIV, 2012 WL 13129922 (S.D. Fla. Jan. 17, 2012) (unpublished). Specifically, the Data Download Program generated a chart containing the average prime rate charged by banks on short-term loans to businesses. See Data Chart, Federal Reserve System, https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=6fa2b8138e0eafe0ad6cde24ba2307f5&lastobs=&from=10/01/2018&to=12/31/2020&filetype=csv&label=include&layout=seriescolumn&pp=Download (last updated December 22, 2020).

[13] The average prime rate that will ultimately be applied by the Court, if this Report and Recommendation is adopted, may be different than the one recommended here depending on the date of the final judgment.

<u>Dredging Co.</u>, 594 F.3d 832, 838 (11th Cir. 2010) (citation omitted). Attorney's fees may be awarded only if "(1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorney['s] fees." <u>Id.</u> (citation omitted).

The bad faith exception to the general rule is "unquestionably [an] assertion[ ] of inherent power in the courts to allow attorney['s] fees in particular situations, unless forbidden by Congress." <u>Noritake Co.</u>, 627 F.2d at 730 n.5 (quoting <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 259 (1975)). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46 (1991)).

To calculate an award of reasonable attorney's fees, this Court generally follows the "lodestar approach." <u>Newman v. Ormond</u>, 396 F. App'x 636, 640 (11th Cir. 2010) (citation omitted); <u>see</u> <u>N. Fla. Shipyards, Inc. v. M/V ATLANTIS II</u>, No. 3:17-cv-1273-J-34MCR, 2018 WL 3357364, at *3 (M.D. Fla. May 21, 2018) (unpublished) (using lodestar approach in admiralty case), <u>report and recommendation adopted</u>, No. 3:17-cv-1273-J-34MCR, 2018 WL 3327929 (M.D. Fla. July 6, 2018) (unpublished). The lodestar approach consists of two parts. First, the "lodestar" is calculated; that "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area." <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1353 (11th Cir. 2000) (citation omitted). Second, the "lodestar" may be adjusted "to

- 19 -

account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted); see also N. Fla. Shipyards, Inc., 2018 WL 3357364, at *3. The burden is upon the fee applicant to "supply[ ] the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." Norman, 836 F.2d at 1303; see also N. Fla. Shipyards, Inc., 2018 WL 3357364, at *3. When determining whether a rate is reasonable the Court considers the following factors:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citing Hensley, 461 U.S. at 430 n.3).

In determining whether the number of hours expended are reasonable, the Court must ensure that "excessive, redundant or otherwise unnecessary" hours are excluded from the amount claimed. Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 434).

Here, Plaintiff seeks attorney's fees in the amount of $16,346.00. Amended Suppl. Mem. at 5, 11. The requested fee is based on 94.8 hours of work by four attorneys and a

paralegal at rates ranging from $95.00 to $195.00. Id. at 5-6, Ex. 1 ¶¶ 3-4 (counsel's affidavit). Plaintiff's counsel represents that the requested rates "are lower than the usual and customary fees in the region and lower than the usual and customary fees assessed by [counsel's law firm] for similar work." Id. at Ex. 1 ¶ 5 (counsel's affidavit). In support of the amount requested ($16,346.00), Plaintiff submitted a ledger containing a breakdown of the hours and amounts billed. See id. at Ex. 2. The amounts set out in the ledger, however, total $16,290.50. See id. at Ex. 2, p. 5 (showing a total of 94.5 billable hours and $16,290.50 in billable fees).

Plaintiff argues it is entitled to attorney's fees because "Defendants have acted in bad faith since their ship sailed away from St. Augustine." Id. at 10. According to Plaintiff, "Defendants quickly admitted liability, but continue to avoid responsibility to this day." Id. Plaintiff asserts that "Defendants promised to pay Plaintiff not long after this allision, but have not tendered a single cent . . . since." Id. Plaintiff states that Defendants did not "even provide any insurance information to Plaintiff, simply stating that they did not have any." Id.

As to Defendants' claim that they do not know where the Vessel is located, Plaintiff argues that "[a] 70-foot boat does not just disappear" and that "[o]wners of deep-water docks do not allow random boats to dock for free for months, and with technology or a phone book, they can track down a boat's owner for payment." Id. at 10-11. Plaintiff contends that even though Southern Marine stated the "Vessel is being held for ransom, when pressed for details, [it] gave no contact details or specifics." Id. at 11. Plaintiff asserts Defendants turned down its offer for help in retrieving the Vessel. Id. Plaintiff argues that "[w]hile port scams and shakedowns may occur, declining help on such a matter is a clear

indicator that Defendants are acting in bad faith by refusing to pay what is clearly owed." Id. Plaintiff also asserts Defendants have been served with court documents "multiple times," and they have failed to respond to Court Orders, "despite being given multiple opportunities." Id.

Upon review, the undersigned finds that 1) Plaintiff is entitled to the requested attorney's fees because Plaintiff has shown that Defendants acted in bad faith in the course of the litigation,[14] and 2) the fees requested are reasonable. These findings are discussed in turn below.

Plaintiff's representations in the Supplemental Motion for Default are relevant to this issue. Plaintiff represented that "[p]rior to initiating this litigation, numerous efforts were made to locate [the Vessel] and sell it to pay for the damages caused by its allision with Plaintiff's dock." Supp. Motion for Default at 2. According to Plaintiff, Mr. Gatchell and Southern Marine had "agreed that this was the course in which they intended to proceed, but asserted that [the Vessel] had been left in Haiti." Id. (citation omitted). Specifically, Mr. Gatchell and Southern Marine[15] told Plaintiff in an email that Mr. Tarlowski "took the [V]essel via Haiti, tied the boat to another vessel and left it." Id. at Ex. 1 (Doc. No. 23-1), p. 1. The email further stated that "[t]he vessel line was but [sic] and the boat went aground" and as noted above, that the Vessel was "being held for ransom from the vessel that pulled it off the rocks." Id. The email represented that Southern Marine had no insurance. Id.

---

[14]    As explained below, although some of Defendants' conduct began before the commencement of this action, it has continued during the course of the litigation.

[15]    The email appears to be signed by "Sheri" (evidently a Southern Marine representative), "The Southern Marine Team," " Captain Fred Gatchell," and "Captain Bill Gatchell." Supp. Motion for Default at Ex. 1, p. 1.

Plaintiff's counsel responded via email and offered to "help facilitate the return" of the Vessel from Haiti, stating that he has "some connections down there." Id. at Ex. 2 (Doc. No. 23-2), p. 1. According to Plaintiff, "[d]espite the offer to help and numerous other follow-up communications, [Mr. Gatchell and Southern Marine] did not inform [Plaintiff's counsel] where [the Vessel] was located, or whom to contact to facilitate its return." Id. at 2.

After this action was commenced on August 29, 2019, Mr. Gatchell sent two letters to Plaintiff's counsel: one dated September 30, 2019 and one dated October 14, 2019. Id.; see id. at Ex. 5 (Doc. No. 23-5) (letters). Both letters included the case number and show that Mr. Gatchell was aware of this case. Id. The September 2019 letter stated that it was in response to the summons and that Southern Marine no longer existed due to Mr. Tarlowski's actions and because Mr. Gatchell "had many health problems which required 3 surgeries in 9 months." Id. According to Plaintiff, the October 14, 2019 letter attached a copy of the process server's affidavit. Id. at 2. The October 2019 letter stated that the process server's affidavit "ha[d] the description of someone else, not anyone in this household." Id. at Ex. 5 (Doc. No. 23-5).

Plaintiff's counsel also contacted Mr. Tarlowski via telephone, but Mr. Tarlowski did not disclose the location of the Vessel, "despite multiple good-faith attempts by [Plaintiff's counsel] to elicit this information from him." Id. at 3. Before serving Mr. Tarlowski via email, Plaintiff unsuccessfully attempted to serve him at three addresses, a total of eleven times: ten times between September 9, 2019 and October 3, 2019 and one time on July 10, 2020. See Affidavit of Non-Service (Doc. No. 45-2); Verified Return of Non-Service (Doc. No. 54). On October 3, 2019, the process server—Melissa Kesler-Jones—spoke with Mr.

Tarlowski on the phone. Affidavit of Non-Service at 2. According to the process server, Mr.

Tarlowski stated as follows:

> He was in St. Vincent where he had si[gn]ed a year[-]long contract and would only be returning to the US periodically. He went on to explain he knew that [Ms. Kesler-Jones] was a process server attempting to deliver documents involving a boating accident. He said that he would not notify when he returned to arrange service nor otherwise cooperate and/or voluntar[ily] accept service. He would figure out what to do about this when someone is in front of him with the papers.

Id.

Defendants' conduct evinces a disregard for this case and a lack of respect for the

Court and Plaintiff. The case was commenced more than a year ago, and despite being

adequately served with process, Defendants have not appeared. Defendants were also

served with the Motions, but they have not responded. See First Motion at 6; Second

Motion at 10.[16] The representation made by Mr. Gatchell in the October 2019 letter that

the process server's affidavit described someone that did not live in the residence further

shows his (and Southern Marine's) bad faith efforts to avoid the instant case. The process

server's affidavits state that the individual served, Carol Gatchell, is Mr. Gatchell's wife.

See Affidavits of Process Server (Doc. No. 19-2). Indeed, Ms. Gatchell informed the

process server that the server "ha[d] the correct place" and that Southern Marine was her

and Mr. Gatchell's business. See id. Further, Florida's 2019 Profit Corporation Annual

Report for Southern Marine lists Ms. Gatchell as the company's registered agent. See

Plaintiff's Notice of Filing Verified Return of Service on the Vessel (Doc. No. 30) at Ex. A.

Mr. Tarlowski's statement to the process server that "he would not notify when he returned

---

[16]     Mr. Tarlowski was not served with the First Motion as his physical address was unknown. As noted, the First Motion did not seek a default judgment against him.

to arrange service nor otherwise cooperate and/or voluntar[ily] accept service" further shows his bad faith disregard for the case. See Affidavit of Non-Service (Doc. No. 45-2) at 2. Defendants' nonappearance and noncompliance has been willful, as they have been on notice of every pertinent Order and filing made in this case.

Moreover, based on the representations made in the Supplemental Motion for Default and the email correspondence between Plaintiff's counsel and Mr. Gatchell/Southern Marine, it is clear that Mr. Gatchell and Southern Marine agreed to sell the Vessel to pay for Plaintiff's damages. Yet, they apparently have not sold the Vessel and declined the offer from Plaintiff's counsel to help locate and sell the Vessel. Although Mr. Gatchell's and Southern Marine's conduct in this regard occurred prior to the commencement of this action, such conduct evidently continued "in the course of the litigation," Misener Marine Const., Inc., 594 F.3d at 838, as they apparently still have not sold the Vessel or accepted Plaintiff's counsel's offer to help.

Upon review of the billing records, the relevant factors, and the applicable case law from this District, the undersigned finds that the requested hourly rates and total fees are reasonable to the extent they are supported by the ledger attached to the Amended Supplemental Memorandum. None of the tasks billed for appear to be excessive or unnecessary. Based on the amounts in the ledger, the total lodestar here is thus $16,290.50. Upon consideration, no adjustment to the lodestar is recommended because if this Report and Recommendation is adopted, Plaintiff will prevail and receive default judgment.

### 3. Costs

"[I]n the matter of costs, [an admiralty] court has the widest latitude to insure that an injustice is not done by an inexorable rule that costs follow the decree." Holden v. S. S. Kendall Fish, 395 F.2d 910, 913 (5th Cir. 1968). Rule 54 provides that "[u]nless a federal statute, the[ R]ules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The types of costs that are recoverable under Rule 54 are limited to those enumerated in 28 U.S.C. § 1920, which provides that costs may be taxed for the following:

(1)   Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)   Docket fees under [28 U.S.C. § 1923]; and

(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920; Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987) (explaining that "§ 1920 defines the term 'costs' as used in Rule 54(d)"; that is, "[s]ection 1920 enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)"). The Court may tax the fees of the United States marshal as set out in 28 U.S.C. § 1921.

Costs incurred for "facsimiles, long distance telephone calls, couriers, express mail, computerized legal research, attorney travel and lodging, postage, search services, office supplies, attorney meals, secretarial services, mediation and expert witness fees . . . are not compensable under § 1920 because these expenses are not enumerated in the statute." Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002) (citation omitted). On the other hand, costs incurred for photocopying, service of process, witness fees, and court reporter fees are recoverable when "adequately described and documented." Id. at 1340 (citing 28 U.S.C. § 1920(1)-(4)).

Here, Plaintiff seeks $1,951.80 in costs: $12.80 for postage; $731.00 for service of process; $396.00 for service of the First Motion and the January 9, 2020 Order; $387.00 for service of the initial Supplemental Memorandum; $400.00 for the filing fee; and $25.00 for the abstract of title of the Vessel. Amended Suppl. Mem. at 5, 11, Ex. 3 (list of costs).[17] The undersigned addresses each in turn below.

### a. Postage

Plaintiff requests $6.80 in costs incurred on June 10, 2019 (prior to the commencement of this action) for "[p]ostage for serving demand letter via certified mail, return receipt requested to Southern Marine Services, Inc." and $6.00 for postage for serving the initial Supplemental Memorandum. Id. at Ex. 3. These requests are due to be

---

[17]        The list of costs shows a $129.00 charge for service of a "subpoena" on Mr. Tarlowski. The invoice number associated with that charge corresponds to the client number on the Return of Non-Service regarding the July 10, 2020 unsuccessful attempt at personal service on Mr. Tarlowski. Compare Amended Suppl. Mem. at Ex. 3, with Return of Non-Service (Doc. No. 54) at 2. The list of costs also shows three charges for serving a "subpoena" on Mr. Gatchell, Southern Marine, and the Vessel (each charge is for $129.00). See Amended Suppl. Mem. at Ex. 3. The invoice numbers associated with these charges correspond to the client numbers on the proofs of service of the initial Supplemental Memorandum. Compare Amended Suppl. Mem. at Ex. 3, with Affidavits of Process Server (Doc. Nos. 41, 42, 43).

denied because postage is not compensable under § 1920. <u>See</u> <u>Scelta</u>, 203 F. Supp. 2d at 1339.

### b. *Private Server Costs*

Plaintiff seeks a total of $1,514.00 for costs of service by private servers. Specifically, Plaintiff seeks $731.00 for costs incurred for service of process ($180.00 for service on Southern Marine; $121.00 for service on the Vessel; $368.00 for service on Mr. Tarlowski; and $62.00 for service on Mr. Gatchell); and $783.00 for costs incurred in serving other documents in the case on Mr. Gatchell, Southern Marine, and the Vessel (a total of $396.00 for service of the First Motion and the January 9, 2020 Order and a total of $387.00 for service of the initial Supplemental Memorandum). <u>See</u> Amended Suppl. Mem. at Ex. 3.

There are two issues with the request for service costs. First, it would be inequitable to award the costs sought for service on the Vessel because judgment is not being entered against that defendant. Second, although "private process server fees may be taxed pursuant to [28 U.S.C.] §§ 1920(1) and 1921," such fees may not exceed the statutory amount authorized by 28 U.S.C. § 1921, <u>U.S. EEOC v. W&O, Inc.</u>, 213 F.3d 600, 624 (11th Cir. 2000), which is "$65 per hour (or portion thereof) for each item served . . . , plus travel costs and any other out-of-pocket expenses," 28 C.F.R. § 0.114(a)(3).[18] The Amended Supplemental Memorandum does not provide the documentation and information needed to determine whether the requested costs for service may be authorized (e.g., how long it

---

[18]    "Item" is defined as "all documents issued in one action which are served simultaneously on one person or organization." 28 C.F.R. § 0.114(d).

took the server to effect service or whether any out-of-pocket expenses or travel costs were incurred). See J.D. Factors, LLC v. Lott Transp., Inc., No. 3:10-cv-164-J-34MCR, 2011 WL 13295395, at *4 (M.D. Fla. Jan. 19, 2011) (unpublished). The undersigned thus finds that although costs for service are compensable, the amount to be awarded should be reduced to a total of $1,105.00 ($65.00 per item served per defendant,[19] as that is the amount charged by the United States Marshal Service, see 28 C.F.R. § 0.114(a)(3)). See W&O, Inc., 213 F.3d at 624 (limiting recoverable service costs to statutory amount authorized by 28 U.S.C. § 1921).

### c.  Abstract of Title and Filing Fees

Plaintiff seeks $400.00 for filing fees and $25.00 for the Vessel's abstract of title. Amended Suppl. Mem. at Ex. 3. The undersigned finds that the filing fee costs are appropriate and should be awarded. See 28 U.S.C. § 1920(1) (allowing recovery of "fees

---

[19]    The breakdown of compensable costs of service is as follows:

o  $65.00 – Personal service of process on Mr. Gatchell. See Affidavit of Process Service (Doc. No. 19-2).
o  $65.00 – Personal service of process on Southern Marine. See Affidavit of Process Service (Doc. No. 19-2).
o  $715.00 – Attempts at personal service of process on Mr. Tarlowski. See Affidavit of Non-Service (Doc. No. 45-2); Verified Return of Non-Service (Doc. No. 54).
o  $65.00 – Personal service of First Motion/January 9, 2020 Order on Mr. Gatchell. See Affidavit of Process Service (Doc. No. 35).
o  $65.00 – Personal service of First Motion/January 9, 2020 Order on Southern Marine. See Affidavit of Process Service (Doc. No. 34).
o  $65.00 – Personal service of initial Supplemental Memorandum on Mr. Gatchell. See Affidavit of Process Service (Doc. No. 41).
o  $65.00 – Personal service of initial Supplemental Memorandum on Southern Marine. See Affidavit of Process Service (Doc. No. 42).

Although Mr. Gatchell and Southern Marine were served at the same residence and at the same time, see Affidavits of Process Server (Doc. No. 19-2), it is the practice of the U.S. Marshal Service to charge $65.00 per defendant served. It is also the practice of the U.S. Marshal Service to charge for unsuccessful attempts as well. As such, the undersigned has taken into account the eleven times the process server tried to effect personal service of process on Mr. Tarlowski. See Affidavit of Non-Service (Doc. No. 45-2); Verified Return of Non-Service (Doc. No. 54).

of the clerk"). As to the cost of obtaining an abstract of title of the Vessel, this cost would be compensable if judgment were being entered against the Vessel because the abstract of title would have been "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); see Markel Am. Ins. Co. v. Nodarse, No. 06-22489-CIV, 2008 WL 11480270, at *2 (S.D. Fla. June 12, 2008) (unpublished) (awarding cost of obtaining an abstract of title for the defendant's vessel under 28 U.S.C. § 1920(4)). As noted, however, judgment is not due to be entered against the Vessel, and it would be inequitable for Defendants to pay the cost incurred by Plaintiff in pursuing its case against the Vessel.

### d.  Conclusion on Award of Costs

Upon due consideration of Plaintiff's requests for costs and of the costs permitted under § 1920, the undersigned finds that Plaintiff should be awarded $1,505.00 in costs.

### 4.  Maritime Lien

To the extent the First Motion requests a maritime lien against the Vessel, such a lien was "created as soon as the claim [came] into being . . . ." Minott v. M/Y BRUNELLO, 891 F.3d 1277, 1284 (11th Cir. 2018) (quoting The John G. Stevens, 170 U.S. 113, 117 (1898)); see also Crimson Yachts v. Betty Lyn II Motor Yacht, 603 F.3d 864, 871 (11th Cir. 2010) (recognizing that "maritime liens do not depend on the injured party's possession of the vessel; a maritime lien travels with the vessel wherever it goes, regardless of into whose hands it may pass, whether or not the lien is recorded" (citation omitted)); Riverway Co. v. Spivey Marine & Harbor Serv., 598 F. Supp. 909, 912 (S.D. Ill. 1984) (stating that "[t]he creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the res" (citation omitted) (quoted with approval in Minott, 891 F.3d at 1284)). Thus, no judicial action is

required to establish a maritime lien against the Vessel. In any event, the Court does not have jurisdiction to enter judgment against the Vessel.

### IV.   Conclusion

For the foregoing reasons, it is

**RECOMMENDED**:

1.      That Plaintiff Dolphin Cove Inn, Inc.'s Motion for Default Judgment Against Defendants the Vessel Olympic Javelin, Southern Marine Services, Inc. and Frederick Gatchell (Doc. No. 28; "First Motion") be **GRANTED in part** and **DENIED in part**, and that Plaintiff Dolphin Cove Inn, Inc.'s Motion for Default Judgment Against Defendant Mark Tarlowski (Doc. No. 58; "Second Motion") be **GRANTED** as set out below.

2.      That the First Motion and the Second Motion be **GRANTED** to the extent that the Clerk of the Court be directed to enter a joint and several judgment in favor of Plaintiff and against Defendants Southern Marine Services, Inc.; Frederick Gatchell; and Mark Tarlowski for damages in the amount of $42,826.00 plus pre-judgment interest at a rate of 4.56% (unless the date of the default judgment requires a different interest rate); attorney's fees in the amount of $16,290.50; and costs in the amount of $1,505.00.

3.      That the First Motion be **DENIED** to the extent it seeks the entry of default judgment against Defendant the Vessel Olympic Javelin and to the extent it seeks a maritime lien.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on December 22, 2020.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

- 31 -

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Southern Marine Services, Inc. & Frederick Gatchell
604 Shorewood Drive, Unit 204
Cape Canaveral, FL 32920

Mark Tarlowski
ccaptainmark@gmail.com